UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CITIZENS AGAINST CASINO GAMBLING IN ERIE
COUNTY, REV. G. STANFORD BRATTON, D. MIN.,
EXECUTIVE DIRECTOR OF THE NETWORK OF
RELIGIOUS COMMUNITIES, NATIONAL COALITION
AGAINST GAMBLING EXPANSION, PRESERVATION
COALITION OF ERIE COUNTY, INC., COALITION
AGAINST CASINO GAMBLING IN NEW YORK—
ACTION, INC., THE CAMPAIGN FOR BUFFALO—
HISTORY ARCHITECTURE AND CULTURE,
ASSEMBLYMAN SAM HOYT, MARIA WHYTE, JOHN
MCKENDRY, SHELLY MCKENDRY, DOMINIC J.
CARBONE, GEOFFREY D. BUTLER, ELIZABETH F.
BARRETT, JULIE CLEARLY, ERIN C. DAVISON,
ALICE E. PATTON, and MAUREEN C. SCHAEFFER,

                Plaintiffs,

and

COUNTY OF ERIE and JOEL A. GIAMBRA,

                Intervenor-Plaintiffs,

    v.

DIRK KEMPTHORNE,[1] in his Official Capacity as the
Secretary of the Interior, JAMES CASON, in his Official
Capacity as the Acting Assistant Secretary of the Interior
for Indian Affairs, UNITED STATES DEPARTMENT OF
THE INTERIOR, PHILIP N. HOGEN, in his Capacity as
Chairman of the National Indian Gaming Commission, and
NATIONAL INDIAN GAMING COMMISSION,

                Defendants.

**DECISION AND ORDER**

06-CV-0001S

---

[1] Former Secretary of the Interior, Gale A. Norton, was the first named defendant when this action was filed. Dirk Kempthorne, who replaced Norton as Secretary following his confirmation by the Senate on May 26, 2006, was later substituted.

## I.  INTRODUCTION

On January 12, 2007, the Court issued a Decision and Order relative to four motions then pending in this action.  Among its rulings, the Court granted in part and denied in part Defendants' Motion to Dismiss the Complaint.  The Court also remanded to the Chairman of the National Indian Gaming Commission (the "NIGC") his approval of the Seneca Nation of Indians Class III Gaming Ordinance of 2002 as Amended.  On remand, the NIGC Chairman was instructed to determine whether land ultimately purchased by the Seneca Nation of Indians ("SNI") in Buffalo for gaming is "Indian lands" as defined in the Indian Gaming Regulatory Act ("IGRA") and to consider, if necessary, the applicability of section 20 of the IGRA, 25 U.S.C. § 2719, to the Buffalo Parcel.  In light of the remand, the remainder of the Complaint was dismissed in its entirety.  (Docket No. 67.)

On January 29, 2007, Defendants moved for reconsideration of the Decision and Order, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, based on the need to correct three purported "clear errors" therein.[2]  Specifically, Defendants argue that:

> (1)   The Court incorrectly found that the Secretary of the Department of the Interior (the "DOI") lacks authority to interpret the IGRA, 25 U.S.C. §§ 2701 *et seq*.;
>
> (2)   The Court incorrectly found that the NIGC Chairman was required to make a site-specific determination when approving the Gaming Ordinance; and
>
> (3)   The Court misconstrued the law regarding the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, and erred in finding that the United States waived its sovereign immunity for this suit.

---

[2] Defendants filed a Memorandum of Law ("Defs' MOL"), a Reply Memorandum of Law ("Defs' Reply MOL"), a Notice of Recent Authority with a copy of Michigan Gambling Opposition v. Norton, Civ. No. 05-01181, 2007 U.S. Dist. LEXIS 15430 (D.D.C. Feb. 27, 2007) annexed thereto, and a Reply to Plaintiffs' Response to Defendants' Notice of Recent Authority.

Plaintiffs' oppose the motion in all respects.[3] For the reasons fully set forth below, Defendants' motion for reconsideration is granted in part and denied in part.

## II. DISCUSSION

**A.    The Secretary's Authority to Interpret the IGRA**

**1.    The Government's Position**

The Government ("Defendants") first asks the Court to reconsider its statement that because the Secretary is not charged with the IGRA's administration, the Secretary's interpretation of the IGRA's terms is owed no deference.[4] According to Defendants, the Court's reliance on Sac and Fox Nation of Missouri v. Norton, 240 F.3d 1250 (10th Cir. 2001) is misplaced because soon after the decision was issued, it was "superceded" and "overruled" by statute. Defendants urge that, contrary to the Court's statement, the Secretary has broad authority to interpret the IGRA.

In 1996, the Wyandotte Tribe involved in Sac and Fox Nation requested that the Secretary take into trust a tract of land on which the tribe intended to develop a class II and class III gaming facility. *Id*. at 1256. The tribe's request implicated Pub. L. 98-602, 98 Stat. 3149[5], and the Indian Reorganization Act of 1934, 25 U.S.C. § 465, the statute pursuant to which the Secretary may acquire land in trust for the purpose of providing land for

---

[3] Plaintiffs filed a Memorandum in Opposition to Defendants' Motion for Reconsideration ("Pls' MOL") and a Response to Defendants' Notice of Recent Authority.

[4] The statement to which the Government objects is found at page number 38 of the Decision and Order. (Docket No. 67.)

[5] This legislation provided for the appropriation and distribution of money in satisfaction of judgments awarded to the Wyandottes by the Indian Claims Commission and the Court of Claims in compensation for lands that the tribe had ceded to the United States in the 1800s. The legislation also provided a sum certain to be used for the purchase of real property to be held in trust by the Secretary. Sac and Fox Nation, 240 F.3d at 1255.

Indians. In addition, because the land was acquired after the enactment of the IGRA and its provision prohibiting gaming on trust lands acquired after October 17, 1988, the Secretary considered whether the tribe's intended use of the tract would fall within one of the exceptions to the prohibition. *Id.* at 1254-56. The Secretary first opined that a tribal burying ground known as the Huron Cemetery, which was adjacent to the tract the tribe sought to have taken into trust and had been permanently reserved for use as a cemetery, was a "reservation" for purposes of the IGRA. *Id.* at 1256. On the basis of his "reservation" determination, the Secretary concluded that the contiguous parcel the tribe sought to have taken into trust would fall within the exception to the gaming prohibition set forth at 25 U.S.C. § 2719(a)(1). *Id.*

The Sac and Fox Nation plaintiffs challenged, among other things, the Secretary's decision to acquire the tract in trust and his conclusion that the tribe could lawfully game on the property. *Id.* at 1256-57. The district court made a number of determinations, but refrained from deciding whether the Huron Cemetery constituted a "reservation." *Id*. at 1258. The Tenth Circuit did consider that issue, found that it owed no deference to the Secretary's interpretation of the IGRA's terms, and went on to hold that the Huron Cemetery did not fall within the IGRA definition of "reservation." *Id*. at 1264-67.

Following the Tenth Circuit's decision, as Defendants correctly note, Congress expressly stated that "[t]he authority to determine whether a specific area of land is a "reservation" for purposes of [the IGRA] was delegated to the Secretary of the Interior on October 17, 1988[6] . . . ." Department of the Interior and Related Agencies Appropriations Act, 2002, Pub L. No. 107-63, § 134, 115 Stat. 414, 443 (2001). Defendants previously

---

[6] This is the date of the IGRA's enactment.

conceded, in their opposition to Plaintiffs' Motion for Summary Judgment, that the Buffalo Parcel at issue in this case does not constitute a reservation, nor can it become part of the SNI's existing reservations. (Docket No. 53-1 at 15-16, 16 at n. 9, and 23 at n. 15.) Nevertheless, Defendants urge that Pub. L. No. 107-63 "superceded" and "overruled" Sac and Fox Nation not just with respect to reservation land, but by confirming the Secretary's broad authority to interpret the IGRA. In support, they cite to City of Roseville v. Norton, 348 F.3d 1020 (D.C. Cir. 2003) (whether Secretary's acquisition of new reservation land for tribe restored to federal recognition was "restoration of lands" within the meaning of IGRA) and State of Oregon v. Norton, 271 F. Supp. 2d 1270 (D. Or. 2003) (challenge to Secretary's interpretation of "restoration of lands" exception to IGRA's after-acquired lands prohibition).

Defendants claim the Court erred when it failed to find that the Secretary has the authority to interpret the IGRA generally, and 25 U.S.C. § 2719 specifically. To that end, Defendants urge that once the Secretary approves the conduct of gaming activity, the NIGC cannot determine otherwise. (Defs' MOL at 4, n.1.)

   **2.    The Plaintiffs' Position**

Plaintiffs respond by arguing that Pub. L. No. 107-63, § 134, on its face, is narrowly circumscribed, and speaks only to the Secretary's authority to determine whether a particular tract of land qualifies as a "reservation." It is Plaintiffs' position that this legislation did not amount to a delegation of authority to the Secretary to interpret all of the IGRA. Furthermore, Plaintiffs characterize Defendants' position that Sac and Fox Nation was "superceded" and "overruled" as patently unsupportable. Indeed, as Plaintiffs note,

Congress subsequently felt the need to again clarify its position on Sac and Fox Nation in the Department of the Interior and Related Agencies Appropriations Act, 2004:

> SEC. 131. (a) IN GENERAL.—Nothing in section 134 of the Department of the Interior and Related Agencies Appropriations Act, 2002 (115 Stat. 443) affects the decision of the United States Court of Appeals for the 10th Circuit in Sac and Fox Nation v. Norton, 240 F.3d 1250 (2001).

Pub. L. No. 108-108, § 131, 117 Stat. 1241 (2003).[7]

While Plaintiffs concede that Pub. L. No. 107-63 does clarify the Secretary's authority to determine whether land qualifies as a "reservation," they argue that the legislation should not be read more broadly than its plain terms. As such, it has no relevance here where the parties agree that the Buffalo Parcel is not, and cannot become, a reservation for purposes of the IGRA.

Finally, Plaintiffs urge that even if Defendants are correct in stating that the Secretary is entitled to deference with respect to interpretations of the IGRA, such a finding would not alter the outcome of the Court's Decision and Order—*i.e.*, remand to the NIGC Chairman for further proceedings—and, thus, Defendants' argument does not provide an appropriate basis for reconsideration. *See* In re Converium Holding AG Securities Litig., 04 Civ. 7897, 2007 U.S. Dist. LEXIS 25849, at *4-5 (S.D.N.Y. Apr. 9, 2007) ("A motion for reconsideration should be granted only where the moving party demonstrates that the court has overlooked factual matters or controlling precedent that were presented to it on the

---

[7] Defendants argue, in reply, that this clarification was specifically directed to confusion that arose after the enactment of Pub. L. No. 107-63 about whether Congress intended to reverse the Tenth Circuit's decision that the Huron Cemetery was not a reservation for purposes of the IGRA and that the contiguous lands exception did not apply to the adjacent tract taken into trust. *See* Pub. L. No. 108-108, § 131(b) (sanctioning the ultimate result in Sac and Fox Nation). Thus, according to Defendants, Pub. L. No. 107-63 continues to require that decisions by the Secretary regarding a parcel's status be accorded deference. In further support, Defendants cite to Michigan Gambling Opposition v. Norton, 05-01181, 2007 U.S. Dist. LEXIS 15430 (D.D.C. Feb. 27, 2007) (Secretary's decision that property was an "initial reservation") and Citizens Exposing Truth About Casinos v. Norton, 02-1754, 2004 U.S. Dist. LEXIS 27498 (D.D.C. Apr. 23, 2004) (Secretary's decision to take land into trust as tribe's "initial reservation").

underlying motion and that would have changed its decision.") (citations omitted); Lauria v. United States, 3:96cr185, 3:01cv1893, 3:01cv1894, 2007 U.S. Dist. LEXIS 25390, at *5 (D. Conn. Apr. 5, 2007) (reconsideration should be granted only when a party can point to controlling decisions or data that the court overlooked and that might reasonably be expected to alter the conclusion reached by the court) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

### 3. The Court's Consideration

The Court agrees with Plaintiffs insofar as they urge that accepting Defendants argument on deference would not alter the findings underlying the remand—that is, the NIGC Chairman has a duty to determine whether he has jurisdiction to approve a gaming ordinance, the Chairman had sufficient information before him in this case to alert him to the need to consider whether new land the SNI proposed to acquire would be gaming eligible Indian lands, and the record does not indicate that the Chairman was aware of, much less considered, the Secretary's opinion on that issue, or that he gave the question any independent consideration.

Nevertheless, in light of the Court's decision to remand, there is at least the possibility that a dispute involving some of the issues presented in this case may again come before the Court. Although not relevant to the ultimate determination in this case, the deference issue raised by Defendants may become relevant to a future determination on the same or similar issues. In that regard, the Court is not inclined to be as dismissive of the Government's concerns as would typically be the case where, as here, the statement objected to is *dictum*.

The Court agrees that to the extent that it did not, at minimum, recognize the Secretary's authority to determine whether a particular parcel of land qualifies as a reservation for purposes of the IGRA, the statement Defendants object to is overly broad.[8] Fortunately, any concerns Defendants have over whether the Court will give due consideration to the issue of deference when and if it does become relevant are readily dealt with by striking the sentence that is the subject of Defendants' concern from the January 12, 2007 Decision and Order. Accordingly, this aspect of Defendants' motion, though not relevant to the ultimate outcome here, is granted to the extent that the last sentence of the first full paragraph of page number 38 is stricken from Docket No. 67.

**B.    The NIGC Chairman's Duties**

Defendants second argument is that the Court committed clear error in remanding the NIGC Chairman's decision approving the SNI's Gaming Ordinance. As already noted, the Court remanded the matter upon finding there was no basis from which it could conclude that the Chairman, in approving the Ordinance, had considered whether the SNI was proposing to engage in class III gaming activity on Indian lands over which the SNI had, or would have, jurisdiction. (Docket No. 67 at 40-47.)

Defendants argue that such finding was error because: (1) the Chairman's role was limited to verifying that the Ordinance met the NIGC's submission requirements, (2) the Chairman's role was limited to approving a non site-specific ordinance and the IGRA does not require the Chairman to consider whether a particular parcel on which gaming is

---

[8] The Court declines to engage in further analysis at this juncture and issue what would amount to an advisory opinion on the issue of deference for a dispute that it may or may not see again and which may or may not involve the same intersection between the IGRA and other statutes as was presented here.

proposed is Indian lands, (3) even reading the Ordinance and Nation-State Gaming Compact together, there was not sufficient information to allow the Chairman to make an Indian lands determination, and (4) in the event an Indian lands determination was required, the Secretary of the DOI made that determination when she permitted the Compact to go into effect.

Each of these points was raised by Defendants in their Motion to Dismiss. (Docket No. 22 at 31-35.) The Court expressly rejected each argument as a basis for dismissal of all claims against the NIGC and its Chairman, and held that the Chairman is required to determine whether a tribe is proposing to engage in class III gaming activity on Indian lands. In other words, before approving a gaming ordinance, the Chairman must consider whether such approval is within his jurisdiction.

Defendants have not offered anything in their Motion for Reconsideration on this issue that the Court did not fully consider in the first instance.[9] Simply recycling arguments the Court previously rejected does not sufficiently demonstrate that the Court's decision to remand this matter to the Chairman was "clear error." At best, it demonstrates Defendants' dissatisfaction with the outcome. See Sidney v. United States, 03-CV-791S, 2006 U.S. Dist. LEXIS 24469, at *4 (W.D.N.Y. Apr. 28, 2006) ("[m]otions for reconsideration are not to be used as a means to reargue matters already disposed of by

---

[9] Defendants do contend, at footnote 6 of their Motion for Reconsideration (Defs' MOL at 7), that the Court should have adjudicated the standing "argument" they made at footnote 16 of their Motion to Dismiss (Docket No. 22 at 31-32). In the Court's view, if Defendants intended to challenge Plaintiffs' standing to commence suit, they should have done something more than insert a conclusory footnote to that effect. It is not the Court's duty to research and make Defendants' arguments for them. In any event, the standing "argument" was premised, in part, on the assertion that the Ordinance did not specifically approve gaming on the Buffalo Parcel, which had not yet been purchased. That assertion was implicitly rejected when the Court determined that the Ordinance sufficiently apprised the Chairman of the SNI's intent to purchase new land for gaming, the general locations of the purchase, the manner in which the land would be acquired and the status the SNI intended to seek for the property.

prior ruling or to put forward additional arguments that could have been raised prior to the decision.") (citation omitted).

**C.      The Quiet Title Act's Preservation of Immunity from Suit**

Finally, the Government questions the Court's determination that this action was not subject to dismissal in its entirety for lack of subject matter jurisdiction based on the QTA. When the Court considered Defendants' QTA argument in the first instance, it proceeded from the assumption that the United States claimed an interest in the Buffalo Parcel based on the property's restricted fee status, but held that the QTA is not applicable to this action because "the Parcel's title is not in danger of divestiture as a consequence of this lawsuit." (Docket No. 67 at 34.)  The Government now states it "finds it necessary to clarify the error in this Court's QTA analysis."  (Defs' MOL at 9.)

Defendants' argument is as follows.  Although the United States holds a fee interest in Indian trust lands, it never holds such an interest in restricted Indian lands.  Because the Government never has a fee interest in restricted Indian lands, the Court's holding has the effect of reading the "restricted Indian lands" exception to the waiver of sovereign immunity out of the QTA.  Defendants then urge that, despite the use of the term "title" in both the caption and the substance of the QTA, Congress actually intended that the QTA preclude actions challenging the status of lands, rather than the title thereto.  They suggest that to conclude otherwise would reverse the Settlement Act process.  In the Court's view, Defendants' argument not only misconstrues the Court's holding; it is contrary to the plain language of the QTA and the holdings in numerous decisions, including the very case on which Defendants rely.

Defendants have not provided any analysis or citations in support of their pronouncement that the Court's decision renders a portion of the QTA a nullity. To the extent that the Court can discern a basis for Defendants' argument, it appears they believe the Court's holding requires that the United States have an ownership interest in property before the QTA applies. The Court neither stated nor implied that such a requirement exists[10] and Defendants' argument, to the extent it is based on such a reading, simply is incorrect and without merit.

Equally without merit is Defendants' argument that Congress intended the QTA to "preclude[ ] review of the status of Indian lands, regardless of whether" title is disputed. (Defs' MOL at 10.) The QTA provides that:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands . . . .

28 U.S.C. § 2409a(a). Stated more simply for purposes of this discussion, the United States cannot be named as a party defendant in a suit seeking to adjudicate disputed title to restricted Indian lands, because it has not waived its immunity with respect to such actions.

As is clear from the plain language of the statute, for the QTA to apply to an action: "(1) the United States must claim an interest [other than a security interest or water rights] in the property at issue, and (2) there must be a disputed title to real property. If either condition is absent, the [QTA] in terms does not apply . . . ." Leisnoi, Inc. v. United States,

---

[10] To the contrary, at footnote 19 of its Decision and Order, the Court expressly stated that "[w]hile restricting fee on property [owned by an Indian or tribe] is an act that allows the United States to claim an interest in the real property for purposes of the QTA, the QTA applies only if the dispute is one that seeks to adjudicate title. No such dispute exists here." (Docket No. 67 at 33, n.19.)

11

170 F.3d 1188, 1191 (9th Cir. 1999) ("Lesnoi I") (although United States, an easement holder, claimed an "interest" in property that was owned by the plaintiff, QTA did not apply because the action did not involve any colorable conflict relating to the property's title). *See also*, Lesnoi, Inc. v. United States, 267 F.3d 1019, 1023 (9th Cir. 2001) ("Lesnoi II") (restating conditions under which QTA applies); The Calf Island Cmty. Trust, Inc. v. Young Men's Christian Ass'n of Greenwich, 263 F. Supp. 2d 400, 402 (D. Conn. 2003) (adopting same); McMaster v. United States, 177 F.3d 936, 939-41 (11th Cir. 1999), *cert. denied*, 528 U.S. 1118, 120 S. Ct. 940, 145 L. Ed. 2d 817 (2000) (phrase "adjudicate a disputed title" concerns the quality of title and involves disputes over the right to or ownership in land; thus, action seeking enforcement of covenants governing land use did not create a title dispute such that QTA waiver would apply).

Defendants urge that "courts of appeal have routinely precluded review of the status of Indian lands," even when its title is not in dispute. (Defs' MOL at 10.) However, the sole Court of Appeals decision they cite fails to support this statement. In Neighbors for Rational Dev., Inc. v. Norton, the Tenth Circuit held that "to the extent Neighbors['] requested relief *would divest the United States of title* to the property the [QTA] precludes Neighbors' suit." 379 F.3d 956, 958 (10th Cir. 2004) (emphasis supplied). Neighbors had urged that the QTA did not apply to its action because it was not claiming any adverse ownership interest in the property at issue. However, the Secretary argued, and the Circuit Court agreed, that Neighbors' request for a judgment declaring the property acquisition null and void was the equivalent of a quiet title action. *Id*. at 961. In short, the QTA applied to the dispute in Neighbors not because the property had Indian land status, but because the lawsuit could result in divestiture of title to real property in which the United States claimed

an interest. It was the property's status as Indian land that then placed it within the exemption to the QTA's waiver of sovereign immunity, thereby precluding Neighbors' suit.

Defendants have not identified any case that was dismissed based on the QTA where the claims or relief requested had no potential to alter title to real property. Defendants do not challenge the Court's express finding in this case that "there is no challenge to the title to the Buffalo Parcel, express or implied, in the [Plaintiffs'] claims or the[ir] requested relief." (Docket No. 67 at 31.) Thus, the Court can discern no error in its conclusion that because the Parcel's title is not in danger of divestiture as a result of this lawsuit, the QTA is not applicable. (*Id*. at 34.) Quite simply, before the Government can invoke the QTA's "trust or restricted Indian lands" exception as a shield to suit, there first must exist a dispute that otherwise triggers the QTA's waiver of sovereign immunity.[11] No such dispute exists here.

Defendants also suggest, without explanation or citation, that "any determination that the Buffalo Parcel is not 'Indian lands' would result in the loss of jurisdiction by the Nation over those lands and consequently, those lands would revert to fee simple lands, not restricted fee Indian lands, thereby reversing the Settlement Act process." This action involved a dispute over, among other things, Defendants' administrative determinations that the Buffalo Parcel's restricted fee status qualifies it as "Indian lands" within the meaning of the IGRA. The Court reviewed Plaintiffs' IGRA claims and determined that they had no potential to divest the SNI of title to the Buffalo Parcel *or to alter the restricted*

---

[11] Defendants' contention that the Court found the United States had waived its immunity under the QTA is simply incorrect. (Defs' MOL at 2.) Rather, the Court held that this action does not fall under the QTA.

*fee status of the property.*[12] (Docket No. 67 at 31-32.) Furthermore, even assuming some alteration in status could result, Defendants have not given this Court any reason to ignore the well-settled authority holding that it is the potential to alter *title* that triggers the QTA.

Defendants have not drawn the Court's attention to clear error in its QTA analysis. Accordingly, the Court reaffirms its decision that the Quiet Title Act is not applicable to this action.

### III. CONCLUSION

For the reasons stated, Defendants' Motion for Reconsideration is granted in part as follows; the last sentence of the first full paragraph of page number 38 is stricken from the Court's Decision and Order dated January 12, 2007 (Docket No. 67). Defendants' Motion is denied in all other respects.

### IV. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Reconsideration (Docket No. 69) is GRANTED to the extent that the last sentence of the first full paragraph of page number 38 is stricken from the Court's Decision and Order (Docket No. 67), but is DENIED in all other respects.

SO ORDERED.

Dated:   April 20, 2007
         Buffalo, New York

                                       /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                       United States District Judge

---

[12] While Defendants state in their reply that the United States potentially would be stripped of its restricted fee interest in the Buffalo Parcel were Plaintiffs to prevail on their IGRA claims, they have offered no citation or rationale in support of that conclusion. Such unsupported assertions are not sufficient to demonstrate "clear error."